FILED

UNITED STATES DISTRICT COURT   04 MAR 22 AM 10: 12
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION   MIDDLE DISTRICT FLORIDA
ORLANDO, FLORIDA

| | |
|---|---|
| DISNEY ENTERPRISES, INC., DC COMICS, HANNA-BARBERA PRODUCTIONS, INC., PLAYBOY ENTERTAINMENT INTERNATIONAL, INC., VIACOM INTERNATIONAL INC., and WARNER BROS. ENTERTAINMENT INC., | CIVIL NO. 6:04-CV-386-ORL-18JGG<br><br>FOR:<br><br>(1)  COPYRIGHT<br>       INFRINGEMENT;<br><br>(2)  TRADEMARK<br>       INFRINGEMENT; |
|         Plaintiffs, | (3)  FALSE DESIGNATION OF<br>       ORIGIN AND FALSE<br>       DESCRIPTION; |
| vs.<br><br>KMR WHOLESALE, INC., SUNIL WARRIER, ASHA WARRIER, and JOHN DOES 1 - 5, | (4)  COMMON LAW UNFAIR<br>       COMPETITION; |
|         Defendants. | **INJUNCTIVE RELIEF SOUGHT**<br>**FILED UNDER SEAL** |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S EX PARTE MOTION FOR**
**TEMPORARY RESTRAINING ORDER, ORDER**
**TO SHOW CAUSE AND ORDER FOR SEIZURE**

I.  PRELIMINARY STATEMENT

Plaintiffs, Disney Enterprises, Inc. (Disney), DC Comics (DC), Hanna-Barbera Productions, Inc. (Hanna-Barbera), Playboy Entertainment International, Inc. (Playboy), Viacom International Inc. (Viacom), and Warner Bros. Entertainment Inc. (Warner), are moving *ex parte* for injunctive relief to enjoin each of the Defendants noted above, including any John or Jane Doe



Defendants found operating out of or near the Defendants' business locations noted in these papers, from the continued infringement of Plaintiffs' distinctive trademarks and copyrighted properties through the importation, sale, offer for sale and distribution of counterfeit and infringing mobile phone face plates, counterfeit and infringing decals, and related merchandise. Plaintiffs move for this relief pursuant to the Copyright Act (17 U.S.C. § 101 *et seq.*) and the Lanham Act of 1946 (15 U.S.C. § 1051 *et seq.*). Additionally, the Plaintiffs seek an *ex parte* order of seizure and impoundment of the counterfeit and infringing merchandise as well as any related documents found in the possession or control of the Defendants named in this action. This relief is specifically provided for by the Copyright Act and Trademark Act as well as by the Rule 65(f) of the Federal Rules of Civil Procedure.[1]

*Ex parte* relief is necessary and proper as the Defendants have never been authorized at any time by the Plaintiffs to manufacture, distribute, import or sell such merchandise, as shown by Plaintiffs' corporate declarations. See Exhibit "E." (All exhibit references are those exhibits attached to the Complaint filed concurrently with this Memorandum). Additionally, Plaintiffs' investigators' declarations show that the Defendants are selling or offering for sale substantial quantities of counterfeit and infringing merchandise bearing the Plaintiffs' copyrighted properties and or trademarks. See Exhibit "D."

---

[1] The Supreme Court added subsection (f) to Rule 65, effective December 1, 2001. The Committee Note to Rule 65(f) points out that subsection (f) was added in conjunction with the abrogation of the antiquated Copyright Rules of Practice. The Committee went on to state that "a common question has arisen from the experience that notice of a proposed impoundment may enable an infringer *to defeat the court's capacity to grant effective relief.* Impoundment may be ordered on an ex parte basis under subdivision [65](b) if the applicant makes a strong showing of the reasons why notice is likely to defeat effective relief."

This motion is being sought *ex parte* as it is believed by the Plaintiffs and their undersigned counsel that should notice be given to the Defendants, the infringing and counterfeit merchandise in the Defendants' possession and control would be secreted, destroyed or otherwise made unavailable for review of this Court. See Exhibits "D" and "F." The likelihood that the Defendants might secret or destroy such evidence is based on the facts that the Defendants have illegally imported the merchandise, and the manner in which they resell it through the wholesale area of Websters' Flea Market and through a warehouse closed to the public. As the Defendants have never been authorized to manufacture or reproduce the Plaintiffs' copyrighted properties or trademarks in any fashion, the Defendants must know that their importation and resale of unauthorized merchandise bearing the well known copyrighted and trademarked characters of Disney, DC Comics, Hanna-Barbera, Playboy, Viacom, and Warner would constitute a direct violation of Plaintiffs' rights. Such violations would open up the Defendants to both civil and possible criminal prosecutions. This conclusion is further supported by the extreme measures taken by the Defendants to secret their distribution operation. These factors indicate not a legitimate business, but rather one which avoids the law. Taken together, and based on the undersigned counsel's experience with hundreds of counterfeiters, including many in the Middle District of Florida, it is very likely that the Defendants will secret or hide the infringing merchandise, and the means for manufacturing the infringing merchandise, if they are given notice of this action, and if an impound of the infringing merchandise is not carried out. See Exhibits "D", "E", and "F".

3

## II.   BACKGROUND AND STATEMENT OF FACT

The Plaintiffs are the owners or exclusive licensees of the copyrights and trademarks indexed as Exhibit "A" and attached to the Complaint as Exhibits "B" and "C." These certificates are prima facie evidence of each of the Plaintiffs' ownership rights in these copyrights and trademarks, and evidence that their rights are valid and subsisting. The Plaintiffs have further shown in their declarations that the Defendants have never at any time been authorized to import, distribute, or sell mobile phone face plates, decals, or related merchandise bearing their trademarks or copyrighted properties. Further, the Plaintiffs have stated in their declarations that the mobile phone face plates, decals, and related merchandise which the Plaintiffs' investigators purchased from the Defendants are counterfeit. Additionally, as shown by the Plaintiffs' investigators' affidavits, the Defendants named in this action are operating a wholesale distributing operation for the distribution and sale of counterfeit merchandise bearing the Plaintiffs' copyrighted properties and trademarks. Based on these facts, it is the Plaintiffs' belief that these Defendants are importing, selling, and distributing unauthorized or counterfeit mobile phone face plates bearing counterfeit decals, as well as related merchandise bearing the Plaintiffs' copyrighted properties and trademarks, and, unless a Temporary Restraining Order, Seizure Order, and Preliminary Injunction is entered, will continue to do so in the future.

## III.   BASIS FOR INJUNCTIVE RELIEF

Section 502(a) of the 1976 Copyright Act specifically authorizes a federal court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. §

4

502(a). Indeed, "injunctive relief is a traditional remedy for copyright infringement." *Sony Music Entertainment, Inc. v. Global Arts Productions*, 45 F.Supp. 2d 1345, 1347 (S.D. Fla. 1999). The Copyright Act also authorizes impounding of infringing articles as well as the means of producing the articles at the beginning of a suit for infringement. Section 503(a) of the Copyright Act specifically provides:

> (a)   At any time while an action under this title is pending, the court may order the impounding, on such terms as it may deem reasonable, of all copies or phono records claimed to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phono records may be reproduced.

17 U.S.C. § 503(a) (2003). Further, Fed. R. Civ. P. 65(f) provides for impoundment upon the proper showing under Fed. R. Civ. P. 65(b).

The Federal Trademark Act (The Lanham Act) also specifically provides for the entry of an *ex parte* temporary restraining order and seizure order against those selling, distributing, and manufacturing counterfeit merchandise bearing marks of the trademark holder. More particularly, §1116(d) provides that the court shall have jurisdiction to enter injunctions in infringement actions.

> In the case of a civil action arising out of 15 U.S.C. § 1114, or 36 U.S.C. § 380, with respect to a violation that consists of using a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, the court may,

5

> upon ex parte application, grant an order under
> subsection (a) of this section pursuant to this
> subsection providing for the seizure of goods and
> counterfeit marks involved with such violation and
> the means of making such marks, and records
> documenting the manufacture, sale or receipt of
> things involved in such violation.

15 U.S.C. § 1116(d) (2003). Section 1116 goes on to require an applicant for such
*ex parte* relief to fulfill certain prerequisites which have been fulfilled by these
Plaintiffs. First, Plaintiffs have not publicized this action and notice of the
application for *ex parte* relief has been given to the United States Attorney as
shown by the attached declaration of the undersigned counsel. *See* Exhibit "F."
Second, the merchandise manufactured or sold by the Defendants bears exact
copies of the Plaintiffs' marks as defined in §1116(d)(1)(B). *See* Exhibit "C" to
the Complaint and the sample purchases attached to Plaintiffs' corporate
Declarations at Exhibit "E." Third, this application is based on the sworn
testimony of the Plaintiffs that they have never authorized or otherwise
licensed any of the Defendants named in this action to manufacture, distribute,
or sell goods bearing its distinctive trademarks. *See* Exhibit "E." Finally, the
Plaintiffs stand ready to post a security bond against the wrongful seizure of the
alleged counterfeit merchandise.

In addition to the Copyright Act and Lanham Act, this Court has
inherent power to issue an *ex parte* seizure order pursuant to the All Writs Act
which provides:

> The Supreme Court and all courts established by
> Act of Congress may issue all writs necessary or
> appropriate in aid of their respective jurisdictions
> and agreeable to the usages and principles of law.

6

28 U.S.C. § 1651(a) (2003).

Accordingly, the Plaintiffs urge that they are clearly entitled to the immediate impoundment of the infringing merchandise and the means of manufacturing said infringing merchandise which is in the possession or control of Defendants. *In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) and, more recently, *Tommy Hilfiger Licensing, Inc. v. Tee's Ave., Inc.*, 924 F. Supp. 17 (S.D.N.Y. 1996).

The United States District Courts in the State of Florida have entered Temporary Restraining Orders and Orders of Impoundment on similar facts. *See Franklin v. Galleon Jewelers, Inc.*, 2001 U.S. Dist. LEXIS 24737 (S.D. Fla. May 15, 2001), *The Walt Disney Company v. Video 47, Inc.*, 972 F.Supp. 595 (S.D. Fla. 1996).[2]

The importance of an *ex parte* seizure order in such cases is now recognized by most courts. The necessity of such an order lies in the likelihood that a defendant who is knowingly selling counterfeit merchandise will destroy or secret the merchandise if notice is given prior to seizure. If this occurs, Defendants could deprive the Plaintiffs of evidence necessary to fully prove the Plaintiffs' case, and deprive the Plaintiffs of their rights to an accurate accounting. Most importantly, Plaintiffs will be unable to remove the counterfeit and infringing merchandise from the marketplace. As stated by the

---

[2]   *But cf. Brockum Int'l, Inc. v. Various John Does*, 551 F. Supp. 1054, 1055 (E.D. Wis. 1982) *with Robert A. Plant v. Various John Does and ABC Companies*, 19 F.Supp. 2d 1316 (S.D. Fla., 1998). In *Plant*, the Court denied the plaintiffs a TRO and Seizure Order against various John Doe Defendants who might sell counterfeit merchandise outside planned rock concerts scheduled in Miami and at other venues nationwide. The court concluded that the plaintiffs' had not sufficiently identified the defendants, naming them only as various John Does and ABC Companies, and had created their own emergency by filing the action right before the concert. *Plant*, and the other cases in this line, are clearly distinguishable. First, the Plaintiffs have gone to great length to identify the Defendants and where they are located. And second, the emergency nature of this action is not the result of a pre-planned nationwide concert tour but rather the hard gained pretext investigations of the Defendants' counterfeiting operations.

Second Circuit in a leading case on the problem of counterfeit and infringing products, "if notice is required, that notice all too often appears to serve only to render fruitless further prosecution of the action." *In re Vuitton et Fils, S.A.*, at 5.

## IV.   PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

In the Eleventh Circuit a district court may grant a preliminary injunction in a trademark infringement action only upon the movant's showing that:

(1)   it has a substantial likelihood of success on the merits;

(2)   the movant will suffer irreparable injury unless the injunction is issued;

(3)   the threatened injury to the movant outweighs the possible injury that the injunction may cause the  opposing party; and

(4)   if issued, the injunction would not disserve the public interest.

*CBS Broadcasting, Inc. v. Echostar Communication Corporation*, 265 F.3d 1193, 1200 (11th Cir. 2001); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). A party is entitled to a preliminary injunction in a copyright infringement action upon the same showing. *CBS Broadcasting, Inc.,* Id., *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002) and *Franklin*, at *4 -*5 ("Injunction is a proper vehicle to prevent violation of the Copyright laws.").

8

The standards applicable to the issuance of a temporary restraining order are similar to the standards for the issuance of a preliminary injunction order. Federal Rule of Civil Procedure 65(b) expressly authorizes the issuance of an *ex parte* Temporary Restraining Order when: 1) the failure to issue it would result in "immediate and irreparable injury, loss, or damage"; and  2) the applicant sufficiently demonstrates the reason that notice "should not be required."  For reasons previously discussed, Plaintiffs have demonstrated that notice to the Defendants should not be required.  That the Plaintiffs will suffer immediate and irreparable injury is addressed herein under the applicable standards for granting a Preliminary Injunction.   The Eleventh Circuit has noted that "injunctive relief may be particularly appropriate in cases involving simple copying or 'piracy' of a copyrighted work."  *Suntrust Bank v. Houghton Mifflin Company*, 268 F.3d 1257, 1265 (11th Cir. 2001).

### A.    Probability of Success on The Merits

#### 1.    Copyright Infringement Claims

To establish a prima facie case of copyright infringement, Plaintiffs must show (1) ownership of a valid copyright and (2) copying of the protected work by the alleged infringer." *Feist Publications, Inc. v. Rural Tele. Serv. Co.*, 499 U.S. 340, 361 (1991); *Palmer*, at 1329; *Suntrust,* at 1265; and *Franklin*, at *5. Moreover, "if the plantiff demonstrates a *prima facie* case for copyright infringement and the absence of any affirmative defenses, the plaintiff who has shown a substantial likelihood of success on the merits is usually entitled a preliminary injunction to such infringement." *Georgia Television Company v. TV New Clips of Atlanta, Inc.*, 718 F. Supp 939, 945 (N.D. Ga. 1989); *Uneeda Doll Co., v. Regent Baby Products Corp.*, 355 F. Supp. 438, 445 (E.D.N.Y. 1972)

(explaining success on the merits is usually shown with proof of *prime facie* elements).

a. Ownership of valid copyright

Copyright registration certificates constitute prima facie evidence of the copyright ownership and validity of each design to which Disney and Viacom claim exclusive rights. Once the plaintiff "produces a copyright certificate, a prima facie case of validity of the copyright is established, and the burden of production shifts to the defendant to introduce evidence of its invalidity." *Portionpac Chemical Corp. v. Sanitech Systems, Inc.*, 217 F. Supp. 2d 1238, 1244 (M.D. Fla. 2002) (citing 17 U.S.C. § 410(c)). Accordingly, Disney and Viacom's copyright certificates, attached aggregately as Exhibit "B" to the Plaintiffs' Complaint, are prima facie evidence of Disney and Viacom's ownership of a valid copyright to each of the designs identified by these Plaintiffs.

b. Copying

As to copying, "because it is extremely difficult to prove copying directly, the plaintiff can show copying circumstantially by demonstrating that the defendant had access to the copyrighted material and that there is substantial similarity between the two works." *Portionpac*, at 1224.; *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1249 (11th Cir. 1999); *Sterch v. Howard*, 974 F.2d 1272, 1275 (11th Cir. 1992).

i. Access

In the instant case, the opportunity for access is manifest, given the tremendous exposure received by Disney's and Viacom's copyrighted properties. While not exclusive by any means of all the copyright properties supporting the

10

present action, there can be no doubt that Disney's characters "Mickey Mouse," "Donald Duck" and "Winnie the Pooh" as well as Viacom's "SpongeBob Squarepants" characters are well known to the public, indeed are household names. This is particularly true in the Orlando area given the large and continuing presence of Disney's "Walt Disney World" resort and theme park and Viacom's character rides and attractions at Universal Studio's theme park. As noted in *Herzog*, in the Eleventh Circuit, access is regarded as "a reasonable opportunity to view." *Herzog*, at 1249.

Even without proof of access, Disney and Viacom may still prevail on their claim of infringement where the works at issue are not just "substantially similar" but "strikingly similar." *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir. 1978). *See also Donald v. Zack Meyer's T.V. Sales & Service*, 426 F.2d 1027 (5th Cir. 1970), *cert. denied*, 400 U.S. 992 (1971). The striking similarity between Disney and Viacom's copyrighted works and the Defendants' merchandise depicting Disney and Viacom's copyrighted properties is clear.

### ii. Substantial Similarity

Judge Learned Hand explained in *Peter Pan Fabrics, Inc. v. Martin Weiner Corporation*, 274 F.2d 487, 489 (2d Cir. 1960), that substantial similarity exists where "the ordinary observer, unless he set out to detect the disparities would be disposed to overlook them, and regard their aesthetic appeal as the same." The Eleventh Circuit has held that "two works are substantially similar if an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Palmer*, at 1330 (citing *Leigh v. Warner Bros.*, 212 F.3d 1210, 1214 (11th Cir. 2000) and

11

*Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir. 1982)). In applying that test, Disney's and Viacom's and the Defendants' works are not examined detail by detail, but rather this Court must look to the overall appearance of the works to see if the combination of those details creates a general impression of substantial similarity. *Fisher-Price Toys, Div. of Quaker Oats Co. v. My-Toy Co., Inc.*, 385 F. Supp. 218, 220 (S.D.N.Y. 1974); *Ideal Toy Corp v. Fab-Lu Ltd.*, 360 F.2d 1021, 1023 (2d Cir. 1966). As noted in *Fisher-Price*:

> It is apparent from an examination of the above-described dolls that the dolls in each pair are strikingly similar to each other. The differences, where they exist, are minor and appear to be the result of a calculated attempt to disguise deliberate copying of plaintiffs' dolls.

385 F. Supp. at 221.

When Defendants' infringing merchandise and Disney's and Viacom's copyrighted characters are shown side by side as compared by the company declarations and viewed from the perspective of the "average lay observer," it is clear that substantial similarity in overall appearance exists. Indeed, Defendants' infringing merchandise constitutes virtually exact copies of Disney's and Viacom's copyrighted characters.

Even if these Defendants did not manufacture the counterfeit merchandise in question, their sale, distribution, and offer for sale of such merchandise violates Disney's and Viacom's exclusive rights. The Copyright Act provides:

12

> Subject to § 107 through § 118, the owner of a copyright under this title has the exclusive right to do and to authorize any of the following:
>
> 1)   to reproduce the copyrighted work in copies or phono records;
> 2)   to prepare derivative works based upon the copyrighted work;
> 3)   *to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership . . .;* and
> 4)   in the case of . . . sculptural works . . . to display the copyrighted work publicly.  (Emphasis added).

17 U.S.C. § 106 (2003) (Emphasis added). As noted in *The Walt Disney Company v. Video 47, Inc. d/b/a Video 47*, 972 F.Supp. 595, 601 (S.D. Fla. 1996), "[p]laintiffs' copyright registrations give the [p]laintiffs the exclusive right to reproduce, distribute and sell" their works.  Here, the Defendants are directly infringing upon Disney's and Viacom's copyrighted properties through Defendants' sale, offer for sale and distribution of unauthorized mobile phone face plates bearing virtually identical copies of Disney and  Viacom's copyrighted properties. *See also United States v. Wise*, 550 F.2d 1180, 1185-86 (9th Cir.), *cert. denied*, 434 U.S. 929, *rehearing denied*, 434 U.S. 977 (1977) ("Any act which is inconsistent with the exclusive rights of the copyright holder as enumerated above in 17 U.S.C. § 106(1)-(5) constitutes infringement.").

   2.  Trademark Infringement Claims

   In order to prevail on a trademark infringement claim, the Plaintiffs must show that their marks were used in commerce by the Defendants without their consent and that the unauthorized use was likely to cause confusion, or to cause mistake, or to deceive.  *Nitro Leisure Products, LLC v. Acushnet*

13

*Company*, 341 F.3d 1356 (11th Cir. 2003); *Burger King Corporation v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983).

DC, Hanna-Barbera, Playboy and Warner have provided copies of their Federal Trademark Registrations. These registrations are prima facie evidence that Plaintiffs have the right to use such marks in commerce. 15 U.S.C. §§ 1057(a), 1115(a). The trademark registrations also provide an inference which the Court may rely on that the Plaintiffs are the senior users of the marks and that the marks are inherently distinctive. *See Porsche Cars North America, Inc. v. Lloyd Design Corp.*, 2002 U.S. Dist. LEXIS 9612, *41 (N.D. Ga. March 28, 2002).

The factors to be considered in analyzing the likelihood of confusion in this circuit are:

1) the strength of the plaintiff's mark;

2) the similarity between the plaintiff's mark and the allegedly infringing mark;

3) the similarity between the products and services offered by the plaintiff and the defendant;

4) the similarity of the sales method;

5) the similarity of advertising methods;

6) the defendant's intent, (does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark); and

7) actual confusion.

*Cumulus Media, Inc. v. Clear Channel Communications, Inc.*, 304 F.3d 1167, 1172, n.5 (11th Cir. 2002) (citing *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985)).

<u>Strength of Plaintiffs' marks</u>

There can be no question that Plaintiffs' marks are extremely strong. DC through Warner has sold over $1,000,000,000 in merchandise bearing the distintive "Batman" mark. PEII's *Playboy* magazine is the best selling men's magazine in the world with a global readership of approximately Fifteen Million readers. As result of this great popularity, the company's brand name, "Playboy" as well as its Rabbit Head logo, have become a major international brand. In 2003 alone more than 1500 Playboy branded products were sold in 125 countries and territories with global retail sales of approximately Three Hundred and Fifty Million. Likewise, the other Plaintiffs' trademarks are no less recognizable. It would stretch the imagination that any of the Defendants in this action are not familiar with the Warner's "Looney Tunes" characters such as "Bugs Bunny" or Hanna-Barbera's "Scooby-Doo" character. In view of each of the Plaintiffs' marketing and sales efforts and long standing use of the marks, the Plaintiffs' marks must be deemed to be strong marks worthy of broad protection, and certainly protection against Defendants' sale of counterfeit merchandise.

<u>Similarity of the marks and goods</u>

In the instant case the marks are not only similar, but exact copies of the Plaintiffs' marks. *See* Exhibit "C" to the Complaint and samples attached to the Plaintiffs' corporate Declarations at Exhibit "E." Moreover, the goods sold by

the parties are identical. Where, as here, the Defendants are utilizing exact copies of the Plaintiffs' trademarks on substantially the same types of products in substantially the same manner, *confusion must be presumed. VM G Enterprises, Inc. v. F. Quesada & Franco, Inc.*, 788 F. Supp. 648 (D.P.R. 1992); *see also Polo Fashions v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987) (explaining that a presumption of public confusion arises when counterfeit symbols are substantially identical to genuine symbols and are used in the same manner as the genuine symbols are used). "Where a counterfeit item is virtually identical to the genuine item, the very purpose the individuals marketing the cheaper [counterfeit] items is to confuse the buying public into believing that it is buying the true article." *Fila U.S.A., Inc. v. Nam Joo Kim*, 884 F. Supp. 491, 494 (S.D. Fla. 1995) (*citing In re Vuitton et Fils S.A*, 606 F.2d 1 (2d Cir. 1979)).

### Similarity of the sales methods and advertising and intent in adapting the mark

Plaintiffs sell their goods on both the wholesale and retail level through national and regional retail chains, stand alone retail stores, and via the Internet. Defendants sell on the wholesale level and through area flea markets. The ultimate retail customer for both the Plaintiffs' products and the Defendants are the same.

With respect to advertising, Plaintiffs openly market their products via television, print, radio and Internet advertising. In contrast, the Defendants

16

carry out no known advertising of their counterfeit product[3] and sell and distribute their merchandise through various flea market wholesale venues and out of a closed-to-the-public warehouse. Plaintiffs admit that their advertising differs substantially from that carried out by of the Defendants. The nature of the Defendants' business of selling the infringing face plates, including its complete lack of advertising and marketing, suggests a clandestine operation which fears the light of day. Moreover, it supports the conclusion that the Defendants are knowingly and intentionally trading on the goodwill that the Plaintiffs have built up in their well-known trademarks. "A wrongful intent appears easy to infer where the defendant knew of the plaintiff's mark, had the freedom to chose any mark, and 'just happened' to chose a mark confusingly similar to plaintiff's mark." *Howard Johnson International, Inc. v. Craven Properties LTD, Inc.*, 2002 U.S. Dist. LEXIS 19744, *13 (M.D. Fla. June 13, 2002). And "[a] defendant's bad faith may justify an inference of confusing similarity." *American Historic Racing Motorcycle Association, LTD., v. Team Obsolete Promotions*, 33 F. Supp. 2d 1000, 1006 (M.D. Fla. 1998).

Evidence of actual confusion

The Plaintiffs in this action can prevail without any evidence of actual confusion because a showing of actual confusion is not essential in order to find a likelihood of confusion. *Id.* All that is needed to prevail under the statute is a likelihood of confusion. Moreover, in this case, as noted above, where the marks and products are identical, the likelihood of confusion is presumed. *VMG Enterprises, Inc.*, 788 F. Supp. 648 (D.P.R. 1992).

---

[3] It should be noted that the Defendants do operate a website for their business at <http://www.kmrwholesale.com>. Not surprisingly, this publicly displayed website only lists the Defendants' generic mobile phone parts and accessories. See Exhibit "F".

From the foregoing it follows that Plaintiffs will be able to prove that Defendants are infringing on Plaintiffs' marks.

### B.      Irreparable Injury to the Plaintiff

The second element which must be shown for entry of a preliminary injunction is irreparable injury. The general rule in copyright and trademark infringement cases is that, for a preliminary injunction motion, irreparable injury is presumed once the movant has established a case of infringement. *Liberty American Insurance Group, Inc. v. Westpoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271, 1304 (M.D. Fla. 2001); *Suntrust*, at 1275 (holding that the Supreme Court has made clear that absent a good faith fair use defense, irreparable injury should be presumed).  This presumption is increased when the Defendants are direct competitors of the plaintiff. *Franklin*, at *12 (citing *O'Neill Developments, Inc. v. Galen Kilbum, Inc.*, 524 F. Supp. 710, 715 (N.D. Ga. 1981).  Here the Plaintiffs have to compete with low quality copies of their products which cannot help but unfairly compete with their authorized products.

### C.      Harm to the Defendant

The harm to Defendants as a result of the restraining order will be the immediate cessation of their importation, distribution, offer for sale and sale of articles infringing upon Plaintiffs' distinctive copyrights properties and trademarks, and the cessation of unlawful acts which have been calculated to mislead and confuse the purchasing public.

Upon information and belief, and based upon the exposure of the Plaintiffs' copyrighted works and distinctive trademarks, Defendants are well aware of Plaintiffs well known copyrighted properties and trademarks, and

Plaintiffs' rights thereto. Exhibit "E". Merchandise, including mobile phone face plates, decals and related accessories, licensed or manufactured by the Plaintiffs, has been sold nationwide, prominently displaying the Plaintiffs' copyrighted properties and trademarks indexed as Exhibit "A" to the Complaint. Accordingly, Defendants must know that it was only a matter of time before their appropriation of the Plaintiffs' distinctive copyrighted properties and trademarks would lead the Defendants to be enjoined for using the same. The Defendants' investments in their illegal activities should not preclude this Court from granting appropriate and necessary equitable relief. *Scientific Applications, Inc. v. Energy Conservation Corp.*, 436 F. Supp. 354, 362 (N.D. Ga. 1977); *Tish Hotels, Inc. v. Atlanta Americana Motor Hotel Corp.*, 254 F. Supp 743, 750 (N.D. Ga. 1966).

Even if the issuance of a preliminary injunction would have a devastating effect on Defendants' business, an injunction should still be granted by the Court since an infringer should not be permitted to construct a business around infringing activities. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F. 2d 1240 (3rd Cir. 1983), and *Callaway Golf Company v. Golf Clean, Inc.*, 915 F. Supp. 1206, 1215 (M.D. Fla. 1995) ("A preliminary injunction will not cause Defendants' to suffer any legitimate harm, because they are simply being prevented from selling a product that they are not legally entitled to sell.") Accordingly, the balance of hardships tips decidedly in favor of the Plaintiffs.

### D. Public Interest

"The final prerequisite to preliminary injunctive relief questions where the public interest lies." *Scientific Applications, Inc.*, at 362. The public needs to be protected from being misled and confused as to the source of Defendants'

19

counterfeit merchandise which infringes upon Plaintiffs' distinctive trademarks and copyrighted properties. "Injunctive relief will serve the public interest by stopping Defendants' deception of consumers, which by its very nature is against the public interest." *Franklin*, at *12-*13 (citing *Laboratories Roland, C. por A. v. Tex International, Inc.*, 902 F. Supp. 1555, 1570 (S.D. Fla. 1995)).

## V.   CONCLUSION

The nature of the Defendants' business of importing, selling, distributing, and offering for sale counterfeit goods bearing Plaintiffs' popular copyrighted properties and trademarks is such that the only way to provide the Plaintiffs the relief and protection to which it is entitled is by granting the *ex parte* temporary relief sought, a preliminary injunction, and ultimately the complete relief set out in Plaintiffs' Complaint. At present, the Plaintiffs seeks such a Temporary Restraining Order and Seizure Order to insure that the counterfeit merchandise does not disappear and to provide Plaintiff with appropriate relief pending the outcome of the litigation.

Dated this 22 day of March, 2004.

Respectfully submitted,

Michael W.O. Holihan
Florida Bar No: 782165
**Michael W.O. Holihan, P.A.**
1101 North Lake Destiny Road
Suite 350
Maitland FL 32751
Telephone: (407) 660-8575
Facsimile: (407) 660-0510
Mobile: (407) 963-5885
Attorneys for Plaintiffs

20